**NO. 15-1453**

**IN THE**

# United States Court of Appeals
**FOR THE FOURTH CIRCUIT**

ST. PAUL MERCURY INSURANCE COMPANY,

*Plaintiff - Appellee,*

NATIONAL SURETY CORPORATION,

*Defendant - Appellee,*

v.

THF CLARKSBURG DEVELOPMENT TWO, LLC;
MICHAEL H. STAENBERG,

*Defendants - Appellants.*

and

LOWE'S HOME CENTERS, LLC,

*Defendant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

**OPENING BRIEF OF APPELLANTS**

James C. Stebbins, WVSB 6674
Brittany A. Fink, WVSB 12537
Lewis, Glasser, Casey & Rollins, PLLC
BB&T Square
300 Summers Street, Suite 700
Charleston, WV 25326
(304) 345-2000

*Counsel for Defendants-Appellants*
*THF Clarksburg Development Two, LLC and Michael H. Staenberg*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. __15-1453__     Caption: __St. Paul Mercury Insurance Co. v. THF Clarksburg Development Two__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__THF Clarksburg Development Two, Limited Liability Company_____
(name of party/amicus)

_____

who is _____Appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2.    Does party/amicus have any parent corporations?                            ☐YES ☑NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                                        ☐YES ☑NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: s/James C. Stebbins _____     Date: _____ May 7, 2015 _____

Counsel for: Appellants _____

## CERTIFICATE OF SERVICE
**************************

I certify that on _____ May 7, 2015 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Jeffrey S. Zurbuch, Esq.
BUSCH, ZURBUCH & THOMPSON, PLLC
P. O. Box 1819
Elkins, WV 26241
Counsel for St. Paul Mercury Insurance Company

s/James C. Stebbins _____          _____ May 7, 2015 _____
(signature)                                                          (date)

Table of Contents

Page

Corporate Disclosure Statement

Table of Contents...............................................i

Table of Authorities.........................................iii

I.    JURISDICTIONAL STATEMENT...................................1

II.   STATEMENT OF ISSUES PRESENTED FOR APPEAL...................2

III.  STATEMENT OF THE CASE.....................................2

IV.   SUMMARY OF LEGAL ARGUMENT................................10

V.    LEGAL ARGUMENT...........................................14

      A.   Standard of Review..................................14

      B.   The District Court's Rulings........................16

      C.   Whether the District Court erred in determining
           that THF was the "owner" of the building pad for
           purposes of application of the statute of repose.....19

           1.   The contract documents clearly establish
                that Lowe's owned all improvements,
                including the building pad......................20

           2.   Exhibit I to the Ground Lease..................21

           3.   Exhibit A to the Ground Lease..................23

           4.   State Court Complaint..........................25

      D.   Whether the District Court erred by allowing for
           piece-meal application of the statute of repose
           for each subpart of the work performed by a
           single contractor...................................28

      E.   Whether the District Court erred in its
           determination of the date the building pad was
           accepted............................................34

VI.   CONCLUSION...............................................36

i

VII. REQUEST FOR ORAL ARGUMENT................................37

IX.  CERTIFICATE OF COMPLIANCE................................38

X.   CERTIFICATE OF SERVICE..................................39

**TABLE OF AUTHORITIES**

**CASES**

Page

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).....15

*Bagg v. Town of Thompson*,
  2008 Conn. Super. LEXIS 965 (Conn. Super. Ct. Apr. 17,
  2008).....................................................29

*Bellomy v. Union Concrete Pipe Co.*,
  297 F. Supp. 261 (S.D. W. Va. 1969), aff'd 420 F.2d
  1382 (4th Cir.), cert. denied 400 U.S. 904, 91 S. Ct.
  144, 27 L. Ed. 2d 142 (1970)...............................15

*Bowen v. Union Concrete Pipe Co.*,
  299 F. Supp. 1109 (S.D. W. Va. 1969) ......................15

*Federal Reserve Bank v. Wright*,
  392 F. Supp. 1126, 1975 U.S. Dist. LEXIS 13643 (D. Va.
  1975).....................................................30

*Gordon v. Western Steel Co.*,
  950 S.W.2d 743 (Tex. App. 1997)........................32, 33

*Hopkins v. Fox & Lazo et al*,
  242 N.J. Super. 320, 576 A.2d 921 (1990)...............31, 32

*Interstate Cleaning Corp. v. Commercial Underwriters
  Ins. Co.*,
  325 F.3d 1024 (8th Cir. 2003))............................16

*Keffer v. Prudential Insurance Co. of America*,
  153 W. Va. 813, 172 S.E.2d 714 (1970).....................20

*Klaxon Co. v. Stentor Electric Manufacturing Co.*,
  313 U.S. 487 (1941).......................................16

*Laber v. Harvey*,
  438 F.3d 404 (4th Cir. 2006)..............................14

*Liberty Mutual Insurance Co. v. Triangle Industrial Inc.*,
  182 W. Va. 580, 390 S.E.2d 562 (1990).....................16

*Neal v. Marion*,
  222 W. Va. 380, 664 S.E.2d 721 (2008).....................17

*Ocean Winds Corporation of Johns Island v. Lane*,
   347 S.C. 416, 556 S.E.2d 377 (2001).........................33

*Pacific Insurance Co. v. America National Fire Insurance
   Co.*, 148 F.3d 396 (4th Cir. 1998)..........................15

*Patraka v. Armco Steel Co.*,
   *495* F. Supp. 1013, 1980 U.S. Dist. LEXIS 15061 (M.D.
   Pa. 1980)...................................................30

*United States v. Ball*,
   326 F.2d 898 (4th Cir. 1964)................................15

*Weaver v. State Farm Mut. Auto. Ins. Co.*,
   836 S.W.2d 818 (Mo. 1997))..................................16

*Welch v. Engineers, Inc.*,
   202 N.J. Super. 387, 495 A.2d 160, 1985 N.J. Super.
   LEXIS 1362 (App.Div. 1985).............................28, 32

**STATUTES**

28 U.S.C. § 1332............................................1

28 U.S.C. § 2201...........................................1

28 U.S.C. § 1291  ..........................................1

*W.Va. Code* § 55-2-21......................................19

*W.Va. Code* § 55-2-6a....................9, 17, 18, 19, 20

**RULES**

Fed. R. Civ. P. 4(a)(1)(A)..................................1

Fed. R. Civ. P. 56.........................................15

Fed. R. Civ. P. 59(e)......................................15

Local Rule 34(a)...........................................37

**OTHER AUTHORITIES**

Black's Law Dictionary (Sixth Ed.).........................27

I.    **JURISDICTIONAL STATEMENT**

On March 3, 2014, St. Paul Mercury Insurance Company (hereinafter "St. Paul") brought this declaratory judgment action against THF Clarksburg Development Two, LLC (hereinafter "THF"), Michael H. Staenberg, (hereinafter "Staenberg"), National Surety Corporation (hereinafter "NSC") and Lowe's Home Centers, LLC (hereinafter "Lowe's") in the United States District Court for the Northern District of West Virginia. The District Court had subject matter jurisdiction pursuant to 28 USC § 1332 because there was complete diversity of jurisdiction among the parties and the amount in controversy in this case exceeds $75,000.  The District Court had the authority to issue a declaratory judgment under 28 U.S.C. § 2201.

On January 14, 2015, the District Court entered a single Order awarding summary judgment to both St. Paul and NSC. On January 26, 2015, THF timely filed a motion to alter or amend the judgment of January 14, 2015. On March 27, 2015, the district court entered an Order denying THF's motion to alter or amend the judgment, which was a final order that disposed of all parties' claims. On April 24, 2015, THF timely filed a notice of appeal in accordance with Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure.

This Honorable Court has jurisdiction over this appeal pursuant to 28. U.S.C. § 1291.

1

## II.     STATEMENT OF ISSUES PRESENTED FOR APPEAL

1. Whether the District Court erred in determining that THF was the "owner" of the building pad for purposes of application of the statute of repose?

2. Whether the District Court erred by allowing for piece-meal application of the statute of repose for each subpart of the work performed by a single contractor?

3. Whether the District Court erred in its determination of the date the building pad was accepted?

## III. STATEMENT OF THE CASE

### *Background Facts*

#### *The Site Development Agreement and Ground Lease*

On January 30, 2002, THF entered into a "Ground Lease" and a separate Site Development Agreement (hereinafter "SDA") with Lowe's for the development of a parcel of commercial property owned by THF at the Newpointe Plaza shopping center in Clarksburg, West Virginia. J.A. 74, 1051. The agreements were entered into so that Lowe's could build a new retail store in the shopping center. *Id.* In preparation for Lowe's' new store, Lowe's paid THF over four million dollars to perform all of the work outlined in the SDA. Some of THF's duties owed to Lowe's under the SDA include:

- Clearing and grading the land for Lowe's' new store;

- Cutting, filling, and "dynamically compacting" a building pad area suitable for Lowe's to build its store; and

- Hiring contractors, approved by Lowe's, to complete the Site Improvement Work outlined in the SDA. J.A. 75-76.

Under the SDA, Lowe's had the right to assume control of the project in place of THF, the right to inspect all aspects of the Site Improvement Work, and the right of final inspection of all elements under the SDA. J.A. 77. Lowe's was responsible for construction of the building. J.A. 1052.

The SDA outlines the duties and responsibilities of Lowe's and THF while the Ground Lease outlines the ownership of the property and the improvements. Under the Ground Lease, THF is the owner of the Demised Premises, the area of land upon which the building pad, other improvements, and Lowe's' new store would be built. J.A. 1085-1086. The Ground Lease makes it clear that Lowe's is the owner of all improvements placed upon the Demised Premises. J.A. 1053.

### *Building Construction and Settlement Issues*

As required by Lowe's under the SDA[1], THF hired CTL Engineering of West Virginia, Inc. (hereinafter "CTL") as a

---

[1] "Contractor and Contract Requirements" "[THF] shall enter into construction contracts with contractors approved by Lowe's such

subcontractor to perform site work including the construction of the building pad for Lowe's. J.A. 76. On April 9, 2002, at the request of THF, engineer Pat Gallagher of CTL issued a certification to Lowe's that the building pad was complete and was suitable for Lowe's to construct its building. J.A. 89. The building pad was actually delivered to Lowe's on April 15, 2002. J.A. 234-235. Lowe's sent notice that it was formally rejecting the building pad on April 25, 2002 but Lowe's later accepted it. J.A. 877. Lowe's thereafter constructed its store which opened for business on January 7, 2003. J.A. 235.

Later in 2003, Lowe's noticed that the store had experienced a "settlement issue" at the rear of the store. Lowe's made THF aware of the settlement issue in a "punch list" drafted after a warranty inspection in 2003. J.A. 212-213. Thereafter, on April 20, 2004, Lowe's sent THF an email indicating the presence of the "settlement issue." J.A. 214. Lowe's and THF then began to investigate the cause of the settlement issue identified by Lowe's.

On March 4, 2005, CTL issued correspondence to THF indicating that "it remains our opinion that the movement that is occurring in the area of the electrical room is unrelated to

approval not to be unreasonably withheld or delayed, for the Site Improvement Work . . . for the following: . . . B: Completion of the applicable portion of the Site Improvement Work in accordance with the schedule set forth in Section 2.1 above." J.A. 76.

the originally constructed fill and the area is likely being impacted by some external force." J.A. 215. This report was forwarded to Lowe's and Lowe's did not respond.  Accordingly, on November 16, 2005, THF sent a letter to Lowe's indicating "since I have not heard from you and our last report eliminated the pad as the cause of the settlement, I will assume that Lowe's is in agreement with our engineer's conclusion." J.A. 216. Lowe's made no response for almost two years.

Then on August 14, 2007, Lowe's sent a letter to THF indicating that it was still investigating, but was not relinquishing the notion that it may someday assert a claim against THF. J.A. 217-219. The letter specifically indicated that Lowe's was seeking "additional engineering" and that "[t]hese ongoing assessments are not yet complete and are ongoing." *Id.*

Shortly thereafter on January 30, 2008, Lowe's and THF entered into a "Tolling Agreement" to toll the statute of limitations. J.A. 150-153. However, the Tolling Agreement clearly stated that no conclusions had yet been reached by Lowe's and that Lowe's was "continuing to investigate the extent of the soil settlement problems at the Site and their cause." *Id.*

THF heard nothing further from Lowe's for several years. On April 26, 2012, Lowe's filed the underlying case (Civil

5

Action No. 1:12-CV-00072 in the U.S. District Court for the Northern District of West Virginia[2]) formally alleging that THF was responsible for the settlement issues. The underlying Complaint was served on THF in June of 2012 and THF promptly tendered the Complaint to St. Paul and NSC, both of whom had liability coverage in place for THF during the relevant timeframe. J.A. 221.

NSC responded to the tender by denying that it had any duty to defend or indemnify THF or Staenberg based primarily upon the allegation that THF had notice of a potential claim in 2004 and did not notify NSC until after suit was filed in 2012. *J.A. 236.*

St. Paul took a long time to reach its coverage decision. In late February of 2013 (approximately 8 months after THF tendered the Complaint to St. Paul), St. Paul finally decided to defend THF and Staenberg under a reservation of rights which preserved St. Paul's rights with respect to the issue of late notice. J.A. 222.

From 2004 until the Summer of 2013, THF reasonably believed that it was not responsible for any settlement issues and that any property damage was a result of the fact that Lowe's had

---

[2] Civil Action No. 1:12-CV-00072 is not the case currently on appeal. Civil Action No. 1:12-CV-00072 is the underlying case in which Lowe's asserted a claim against THF and Michael Staenberg. Michael Staenberg is a party to the underlying lawsuit and current lawsuit because he signed a personal guaranty of THF's obligations with respect to contracts entered into between Lowe's and THF.  J.A. 1032.

6

built its building partially off of the certified building pad and thus off of the dynamically compacted area. J.A. 236. Defense counsel retained by St. Paul to defend THF and Staenberg initially shared this viewpoint. However, in June of 2013, it became apparent in discovery that the cause of the settlement issues was the fact that Pat Gallagher of CTL did not realize that Lowe's had changed the location and shape of its building and that it was moved back from the footprint originally provided to Mr. Gallagher. J.A. 237. While the information about the changes in the location and shape of the building had been provided to Mr. Gallagher before he certified the pad, he made a mistake and certified the old footprint. *Id.* As a result, a portion of the Lowe's building was built on an area that had not been dynamically compacted and the consensus is that this caused the settlement issues to occur. *Id.*

After the above information came out in discovery, defense counsel hired by St. Paul to defend THF and Staenberg then made a "complete reversal" in terms of how he viewed liability. J.A. 223. Defense counsel recommended to St. Paul at the time that the case be settled. *Id.*

On March 21, 2014, the underlying case was the subject of a final settlement conference before the honorable Judge Keeley. Prior to the settlement conference, St. Paul indicated to THF that because of the coverage issues, it had no interest in

7

contributing anything significant towards a settlement and that THF was on its own if it wanted to attempt to settle the case. J.A. 226-227. Accordingly, THF settled the case with Lowe's at the settlement conference for $2,130,000 plus an agreement to remediate the settlement issues. J.A. 641.

### *Procedural History*

On March 3, 2014 (approximately 3 weeks prior to the above-described settlement conference), St. Paul filed this declaratory judgment action against THF, NSC, and Lowe's seeking a judicial determination that it owes no duty to indemnify THF and Staenberg with respect to the underlying settlement reached between Lowe's and THF. J.A. 15. In the alternative, St. Paul sought a judicial determination of the apportionment of any indemnity obligations between NSC and St. Paul. *Id.*

THF and Staenberg filed a Counterclaim against St. Paul and a Cross-Claim against NSC seeking a declaratory judgment that both insurers owed THF and Staenberg a duty to defend and indemnify them with respect to the allegations in the underlying case and also asserting claims for breach of contract. J.A. 42.

On November 12, 2014, both St. Paul and NSC filed timely motions for summary judgment. J.A. 69, 202. The primary argument advanced by both insurers was that they were entitled to summary judgment against THF and Staenberg because they received late notice of the underlying claims and were allegedly prejudiced

8

thereby.    The District Court rejected several related arguments made by the insurers but nevertheless found that both insurers were in fact prejudiced as a matter of law by the late notice and were therefore relieved of any duty to defend or indemnify THF or Staenberg with respect to the underlying case.

The District Court's decision was based upon the fact that it was undisputed that the settlement issues were likely the fault of CTL.    The District Court found that the insurers were prejudiced as a matter of law because by the time the underlying case was filed, the 10 year statute of repose applicable to the work of CTL had expired. J.A. 865-866. The applicable statute of repose (*W.Va. Code* § 55-2-6a) begins to run when "the improvement to the real property in question has been occupied or accepted by the owner of the real property, whichever occurs first." *Id.*  The District Court reasoned that because THF owned the real property, the statute of repose began to run when THF accepted the pad from CTL as opposed to when Lowe's accepted the pad. J.A. 1135. This was a significant factor in the District Court's ruling because if the date that Lowe's accepted the building pad is used in the analysis, it is undisputed that the statute of repose had not expired at the time that the underlying case was filed and notice was provided to the insurers.

The issue of the statute of repose had not been fully briefed by the parties at the time summary judgment was entered because the issue of repose was not even raised by NSC in its briefing and was only mentioned in passing by St. Paul. J.A. 710-711. Accordingly, THF and Staenberg filed a Motion to Alter or Amend Judgment on January 26, 2015. J.A. 899. During briefing on the motion, THF and Staenberg argued that this case involves a "ground lease" where ownership of the "real property" was split between THF and Lowe's. J.A. 900.

On March 27, 2015, the District Court entered an order denying the Motion to Alter or Amend Judgment. J.A. 1132. The District Court concluded that even though the ownership of the real property under the ground lease was split between THF and Lowe's, that THF was nonetheless the owner of the building pad portion of the real property. J.A. 1136-1137 Accordingly, the District Court's ultimate decision turned entirely on the narrow issue of who is the "owner" of the building pad constructed by CTL.

## IV.   SUMMARY OF LEGAL ARGUMENT

The District Court improperly granted motions for summary judgment filed by St. Paul and NSC and improperly denied THF and Staenberg's Motion to Alter or Amend Judgment.  The District Court erred in finding that THF was the owner of the building pad, that the building pad had a separate and distinct trigger

10

with respect to the statute of repose, and that THF accepted the building pad on the day that CTL certified it.    This Honorable Court should reverse the District Court's decision for the reasons discussed below.

### ISSUE 1- OWNERSHIP OF THE BUILDING PAD

The District Court erred in concluding that THF is the owner of the building pad.   The ground lease is very clear that during the term of the ground lease, the tenant (Lowe's) owns "all buildings and other improvements placed upon the Demised Premises."   The District Court properly concluded that the building pad is an "improvement" and it is clear that it was placed upon the "Demised Premises."   On its face, the statute of repose only applies to "improvements."

The District Court attempted to avoid the application of the above contract language based upon the following conclusions of law: 1) an exhibit to the ground lease allegedly contains an exhaustive list of contemplated improvements that does not include the building pad; 2) an exhibit to the ground lease allegedly shows that the "permissible building area" is located within the "Demised Premises"; and 3) in a pleading in a related case, THF allegedly took the position that "the building pad was done as a prerequisite to entering into the lease agreement with Lowe's."

11

Regarding number 1 above, the ground lease simply does not contain an exhaustive "list" of improvements or any list of improvements for that matter. The ground lease exhibit relied upon by the District Court for this point is simply a diagram of the "EXTERIOR ELEVATION PLANS" for the building to be constructed on the premises.

Nowhere does it purport to be an exhaustive list of all improvements to the property and in fact several improvements that Lowe's is specifically responsible for under the contract documents are not shown. Some of these improvements placed on the Demised Premises but not depicted in the Exterior Elevation Plans above include:

- Sidewalks;

- Parking lots;

- Drainage Systems;

- Water lines

- Pylon sign; and

- Lighting.

With respect to number 2 above, the ground lease exhibit relied upon by the District Court for this point is simply a two dimensional overhead "Site Plan." Its purpose was to provide an overhead view of the lateral boundaries of the leased premises

12

and the permissible location for the building.  It does not depict the building pad or speak in any way to its ownership.

Regarding number 3 above, a position unilaterally taken by THF in a pleading in a related case could not possibly have an effect on the contractual rights of the parties under the Ground Lease and SDA executed more than ten years prior.  Moreover, contrary to the District Court's implication, the position taken by THF in that case is entirely consistent with THF's position in this case.  In addition, the Court's findings directly conflict with language in the relevant contract documents.

### ISSUE 2- PIECE-MEAL APPLICATION OF THE STATUTE OF REPOSE

Assuming *arguendo* that THF is the "owner" of the building pad, the District Court erred in applying a separate and distinct trigger of the statute of repose for just the building pad.  It is undisputed that CTL continued to work in other areas of the Lowe's tract under the SDA long after the building pad was completed.  While it is an issue of first impression in West Virginia, to avoid piece-meal application of the statute of repose, many jurisdictions do not start the running of the statute until a particular contractor has completed all work on the project at issue.  The cases are well reasoned and should have been adopted by the District Court. In fact, even the cases cited by the District Court support the argument that piece-meal application of the statute of repose should be avoided.

13

**ISSUE 3- DATE OF "ACCEPTANCE" OF THE BUILDING PAD**

Assuming *arguendo* that THF is the "owner" of the building pad, the District Court erred in concluding as a matter of law that the statute of repose began to run on April 15, 2002 when THF delivered the building pad to Lowe's.  THF's "acceptance" of the pad was contingent upon Lowe's acceptance of it since THF hired CTL to prepare the pad to Lowe's specifications and for "delivery" to Lowe's. Under the SDA, Lowe's had control of the work being done on the building pad and had the right to accept or reject each element of the SDA. J.A. 77. On April 25, 2002, Lowe's sent a construction progress document indicating that the building pad had still not been accepted by Lowe's. J.A. 877. This date alone is enough to establish that the statute of repose had not expired at the time that the underlying case was filed.

**V.    ARGUMENT**

**A. Standard of Review**

The standard of review for all three issues presented in this appeal is the same because with respect to all three issues, the Court granted summary judgment to the insurers and denied a motion by THF and Staenberg to alter or amend the judgment

This Court reviews *de novo* the district court's granting of summary judgment. *Laber v. Harvey*, 438 F.3d 404, 409 (4th

14

Cir. 2006). A Motion for Summary Judgment is to only be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. *Rule 56, Federal Rules of Civil Procedure; Bellomy v. Union Concrete Pipe Co.,* 297 F. Supp. 261 (S.D. W. Va. 1969), aff'd 420 F.2d 1382 (4th Cir.), cert. denied 400 U.S. 904, 91 S. Ct. 144, 27 L. Ed. 2d 142 (1970); *Bowen v. Union Concrete Pipe Co.,* 299 F. Supp. 1109. The United States Supreme Court recognized in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) that the "inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." The moving party bears the burden of proof with respect to a motion for summary judgment. *U.S. v. Ball,* 326 F,2d 898 (4th Cir. 1964).

This court reviews a district court's decision on a motion to alter or amend judgment under Rule 59(e) for abuse of discretion. *Pacific Ins. Co. v. Am. Nat'l Fire Ins. Co.,* 148 F.3d 396, 402 (4th Cir. 1998).

15

## B. The District Court's Rulings.

This declaratory judgment action involves insurance policies that were issued in Missouri. The first issue that the District Court had to decide was whether Missouri or West Virginia law governs the coverage issues in this case which arise from a loss that occurred in West Virginia. Following *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941), the District Court properly concluded that it must look to West Virginia's choice of law rules in making that decision. J.A. 856. In reliance on *Liberty Mut. Ins. Co. v. Triangle Indus. Inc.,* 182 W.Va. 580, 390 S.E.2d 562 (1990), the District Court properly concluded that Missouri law governs the coverage issues in this case. J.A. 858

After deciding that Missouri law controls, the District Court then properly held that under Missouri law, "the insurer must establish it was prejudiced by the insured's failure to provide timely notice." *Id.* (citing *Weaver v. State Farm Mut. Auto. Ins. Co.,* 836 S.W.2d 818 (Mo. 1997)). The District Court then reasoned that the issue of "prejudice" is normally a question of fact for jury consideration, but further noted that it "may become a question of law if all reasonable persons would conclude the insured did not provide notice in a reasonable manner." *Id.* (citing *Interstate Cleaning Corp. v. Commercial Underwriters Ins. Co.,* 325 F.3d 1024 (8th Cir. 2003)).

16

The District Court then reasoned that the insurers' claims of prejudice in this case can be consolidated into two "broad categories" as follows: 1) the insurers were deprived of the opportunity to mitigate costs including attorneys' fees and property remediation; and 2) the insurers lost the ability to assert claims against CTL Engineering as any such claim was time barred. J.A. 859. The District Court then rejected category 1 above after reasoning that "St. Paul and NSC both fail to indicate that had the insurers been notified of the claim in 2004, these costs would have been mitigated." J.A. 860. However, under category 2 above, the District Court found that the insurers were prejudiced as a matter of law because at the time that the underlying case was filed by Lowe's on April 26, 2012, any claims against CTL were barred by the applicable statute of repose (*W.Va. Code* § 55-2-6a (2014)). J.A. 862.

In reaching this conclusion, the District Court first reasoned that under West Virginia law, the statute of repose begins to run whenever the improvement at issue is "occupied" or "accepted" by the owner, whichever occurs first. J.A. 862-863 (*citing* syl. pt. 6, *Neal v. Marion,* 222 W.Va. 380, 664 S.E.2d 721 (2008)). The District Court then noted that THF delivered the "Building Pad Area" on April 15, 2002. Building on that, the District Court then concluded as follows:

17

> [i]f THF delivered the building pad to
> Lowe's, THF must have accepted its
> subcontractors' work. Accordingly, the time
> for W. Va. § 55-2-6a began to run on April
> 15, 2002, when THF delivered the pad to
> Lowe's and accepted its subcontractors'
> work. Therefore, as of April 15, 2012, THF
> was barred from bringing a claim against its
> subcontractors.

J.A. 864. Using this analysis, the District Court concluded that the underlying case was filed 11 days beyond the applicable statute of repose. *Id.*

At the time that the District Court granted summary judgment to the insurers, the issue of the statute of repose had not been fully briefed because it was not even mentioned by NSC in its briefing and because St. Paul only mentioned repose in conclusory fashion in one part of its brief with no analysis. J.A. 710-711. Accordingly, THF and Staenberg filed a Motion to Alter or Amend Judgment arguing that because this case involves a ground lease, ownership of the "real property" within the meaning of the statute of repose is split between the lessor and the lessee. J.A. 867. The District Court accepted this argument but found that it did not matter after concluding that THF is nevertheless the owner of the building pad, not Lowe's. J.A. 1135-1137. Thus, the issue before the District Court turned into the very narrow question of who owns the building pad, THF or Lowe's.

18

**C. Whether the District Court erred in determining that THF was the "owner" of the building pad for purposes of application of the statute of repose.**

The applicable statute of repose (*W.Va. Code* § 55-2-6a) provides as follows:

> [n]o action, whether in contract or in tort, for indemnity or otherwise, nor any action for contribution or indemnity to recover damages for any deficiency in the planning, design, surveying, observation or supervision of any construction or the actual construction of any improvement to real property, or, to recover damages for any injury to real or personal property, or for an injury to a person or for bodily injury or wrongful death arising out of the defective or unsafe condition of any improvement to real property, may be brought more than ten years after the performance of such services or construction: Provided, that the above period shall be tolled according to the provisions of section twenty-one of this article. ***The period of limitation provided in this section shall not commence until the improvement to the real property in question has been occupied or accepted by the owner of the real property, whichever occurs first.***

*Id.* (emphasis added). Pursuant to *W.Va. Code* § 55-2-21, the applicable statute of repose was tolled when the underlying case was "commenced." *Id.* In this case, the District Court concluded that THF was the "owner" of the building pad improvement, and therefore, decided that the statute of repose commenced when THF "accepted" the building pad from CTL. J.A. 1136-1137.

19

**1. The contract documents clearly establish that Lowe's owned all improvements, including the building pad.**

The Ground Lease entered into between THF and Lowe's unequivocally provides that: "[t]enant [Lowe's] shall during the Term, *own all buildings and other improvements placed upon the Demised Premises."* J.A. 1053. (emphasis added). The District Court correctly concluded that the building pad was, in fact, an "improvement." J.A. 1137. In fact, the applicable statute of repose on its face only applies to "improvements." *See W.Va. Code* § 55-2-6a.

Under well-established West Virginia law, where the provisions of a contract are clear and unambiguous, "they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co. of America,* 153 W.Va. 813, 172 S.E.2d 714 (1970). Had the District Court applied the "plain meaning" of the contract, it would have determined that Lowe's owns the building pad insofar as it is clearly an "improvement" that falls within the broad definition of "all buildings and other improvements placed upon the Demised Premises" as stated in the Ground Lease.

Instead, the District Court decided to construe and interpret the Ground Lease to mean something other than what its clear language states. Thus, the District Court determined that

THF owns the building pad based upon the following conclusions of law: 1) an exhibit to the ground lease (Exhibit I) allegedly contains an exhaustive list of contemplated improvements that does not include the building pad; 2) an exhibit to the ground lease (Exhibit A) allegedly shows that the "permissible building area" is located within the "Demised Premises"; and 3) in a pleading in a related case, THF allegedly took the position that "the building pad was done as a prerequisite to entering into the lease agreement with Lowe's." J.A. 1136.

### 2. Exhibit I to the Ground Lease.

The District Court's first reason to disregard the above language in the Ground Lease was its conclusion that:

> [t]his argument fails to consider that the lease agreement specifically outlined the improvements to be constructed and owned by Lowe's. Notably, the lease agreement refers to the list of these improvements as Exterior Elevation Plans, and the building pad is not included. Rather, the list of improvements includes buildings that Lowe's constructed for its retail store.

*Id.*

The above conclusion is based upon the following language in the Ground Lease: "[a]ttached as Exhibit I and made a part hereof is a copy of Tenants [sic] exterior elevation plans and a list of its architectural and engineering plans and specifications for the building(s) that Tenant intends to

21

construct on the Demised Premises." J.A. 910. However, Exhibit I to the Ground Lease is not, as the District Court claims, an exhaustive "list" of the "buildings" and other improvements that were to be constructed by Lowe's. Rather, as shown below, it is simply a pictorial drawing of the "EXTERIOR ELEVATION PLANS" for the building (singular) that Lowe's was to construct under the SDA. The figure simply depicts the following:



Significantly, Exhibit I says nothing whatsoever about the building pad or its ownership. It is also is clearly not an exhaustive list of the "improvements" that belong to Lowe's

under the relevant agreements.  For instance, the Ground Lease
provides that

> [t]enant [Lowe's] shall, throughout the
> Term, at its own cost, without any cost to
> Landlord, keep and maintain the Demised
> Premises, including all buildings and
> improvements of every kind *including parking
> lots and drainage systems which may be a
> part thereof, and appurtenances thereto,
> including sidewalks adjacent thereto,* in
> reasonably good condition and repair."

J.A. 947. (emphasis added).  These items are not depicted in the
exhibit.

Exhibit I also says nothing about the "pylon sign"
improvement that Lowe's was entitled to construct under section
8(c) of the Ground Lease. J.A. 949. If Exhibit I were intended
by the parties to be an exhaustive "list" of the improvements
owned by Lowe's, at a minimum it would have been a "list" which
included the pylon sign, the parking lots, the drainage system,
and sidewalks.  Instead, Exhibit I is simply a drawing that does
not include many improvements that are indisputably owned by
Lowe's during the term of the Ground Lease.  Exhibit I was
certainly not a sound basis upon which the District Court could
disregard the language of the Ground Lease clearly stating that
Lowe's owns "all buildings and other improvements."

### 3. Exhibit A to the Ground Lease.

The District Court's second reason for disregarding the
clear language of the Ground Lease is its finding that:

23

[f]urther, Exhibit A, which provides a visual description of the leased premises, includes the permissible building area within the Demised Premises." J.A. 1136.

Of course the permissible building area is located within the "Demised Premises." Why would Lowe's be entitled to construct anything outside of the area that it was leasing? Exhibit A is simply entitled "Site Plan" and consists of two overhead two-dimensional drawings that were obviously intended to simply show the lateral boundaries of the leased premises and the anticipated location of the Lowe's store. J.A. 1080. Exhibit A simply depicts the following:



As this Court can see, the drawings do not depict the building pad nor do they offer any insight into its ownership.

Like Exhibit I, Exhibit A is certainly not a sound basis for disregarding the language of the Ground Lease stating that Lowe's owns "all buildings and other improvements."

### 4. State Court Complaint.

The third and final reason that the District Court gave for disregarding the clear language of the Ground Lease on the issue of the ownership of the improvements was as follows:

> [t]his Court's conclusion that the building pad was a part of the "Demised Premises" which was ultimately leased to Lowe's, is consistent with THF's own allegations in its state court complaint filed against CTL [that] "THF engaged the services of various professionals in order to complete the preparation of the site ultimately leased as the Lowe's Tract…As is industry practice when developing sites with extensive earth moving requirements, the site preparation for the Lowe's pad was part of a mass grading project for the entire site, *undertaken for the purpose of, and prior to,* entering into a lease agreement with a tenant. Thus, despite that THF and Lowe's did not execute the Ground Lease and SDA until January 30, 2002, Lowe's was the prospective tenant before then, and the site preparation was completed for Lowe's. The site preparation was completed in or about the summer of 2001."

J.A. 1136. Thus, the District Court reasoned that because the building pad was allegedly completed before execution of the Ground Lease, that it must be a part of the original "Demised Premises" as opposed to an "improvement" that was owned by Lowe's. This reasoning is flawed for several reasons.

25

First of all, it is clear that the building pad was not completed at the time that the Ground Lease was executed on January 30, 2002. To the contrary, the record clearly indicates that work was being done to complete the building pad at least as late as April 17, 2002. J.A. 916.

Secondly, even if the pad had technically been completed prior to execution of the Ground Lease, the District Court's reasoning is directly contrary to clear language in the SDA which states: "in no event shall Lowe's be obligated to accept or Developer [THF] be deemed to have **completed** and delivered the building pad area, nor shall the Pad Delivery Date be deemed to have occurred, ***prior to April 15, 2002.***" J.A. 1009 (emphasis added). It was not appropriate for the District Court to rely upon a "completion" date that directly contradicts the contract documents.

Thirdly, the "Legal Description of the Demised Premises" in the Ground Lease is exactly the same as the legal description in the deed given to THF when it first acquired the property. The deed to THF was obviously delivered prior to any work being performed on the building pad. J.A. 1085-1086. In fact, the legal description of the "Demised Premises" in the Ground Lease specifically states that the conveyance was "the same lands conveyed to THF Clarksburg Development Two, LLC by deed, and recorded in deed book 1302 at page 327 in the office of the

26

clerk, Harrison County, West Virginia." *Id.* The building pad was, therefore, clearly an "improvement" placed upon the "Demised Premises."

Lastly, the District Court's reasoning ignores other signs in the agreement that Lowe's had ownership and control of the building pad during the relevant timeframe. For instance, Lowe's paid $4,087,154.00 for the site work performed by THF and 45% of that amount was attributable to the construction of the building pad. J.A. 1008, 1028. If Lowe's was not satisfied for any reason with the progress of the construction of the building pad, it had the right under the SDA to "take over" the construction and build the pad itself. J.A. 1014. Lowe's even received a warranty from THF with respect to the building pad. J.A. 1016. Finally, THF was required under the relevant contracts to "deliver" the building pad to Lowe's by April 15, 2002. J.A. 1009. "Delivery" means "[t]he act by which the res or substance thereof is placed within the actual or constructive possession or control of another." *Black's Law Dictionary* (Sixth Ed.) at p. 428. Clearly the contracts, when read as whole, lead to the conclusion that Lowe's has owned and controlled the building pad at all relevant times.

Based upon the above, appellants respectfully request that this honorable Court reverse the decision of the District Court and conclude as a matter of law that the building pad is owned

27

by Lowe's.  In the alternative, appellants request that this honorable Court reverse and find that a genuine issue of material fact exists regarding ownership of the building pad.

### D. Whether the District Court erred by allowing for piece-meal application of the statute of repose for each subpart of the work performed by a single contractor.

Even though it is undisputed that CTL continued to do additional site work under the SDA after the building pad was delivered, the District Court decided to apply a separate statute of repose to just the building pad.  While West Virginia does not have any law directly on point, many courts construing similar statutes of repose have concluded that their statutes do not begin to run until the party claiming repose has completed all of their work on site and not just a component part or sub-part of their work.  Many courts have aptly concluded that this is necessary to avoid piece-meal and confusing application of the statute of repose.

For instance, in *Welch v. Engineers, Inc.,* 202 N.J. Super. 387, 495 A.2d 160, 1985 N.J. Super. LEXIS 1362 (App.Div. 1985), the Superior Court of New Jersey concluded that:

> [t]he date when the ten-year time-bar matures under N.J.S.A. 2A:14-1.1 and the period of repose begins must be measured from the final date the person claiming repose and immunity from suit furnishes any and all services or construction which it has undertaken at the job site. *We do not condone a piece-meal concept of repose where*

> ***the contractor is involved in multiple phases of the undertaking.***

*Id.* (emphasis added).

Similarly, in *Bagg v. Town of Thompson*, 2008 Conn. Super. LEXIS 965, 1 (Conn. Super. Ct. Apr. 17, 2008), the superior Court of Connecticut considered what its legislature meant when it stated in its statute of repose that the time period was measured from the time of "substantial completion" of the "improvement to real property." *Id.* The Court found that it would be unworkable to read the statute as creating a piece-meal statute of repose. Thus, the Court reasoned:

> [n]evertheless, if "improvement to real property" is interpreted to mean each component of a project, then this will surely lead to an unworkable and inefficient result, particularly where more than one deficiency is allegedly created by a defendant who is responsible for the whole project. The focus will change from an understandable limitation period in which to file a claim to a component-by-component review to determine whether each part of the whole, and perhaps even subparts of parts, is an "improvement to real property," whether it is "substantially complete," and whether the action is barred by the statute's time limitation. Consequently, a defendant could be subject to multiple repose periods. It is doubtful that the legislature intended this outcome.

*Id.* at 11-12.

A similar conclusion was reached by the United States District Court for the Middle District of Pennsylvania in

*Patraka v. Armco Steel Co., 495 F. Supp.* 1013, 1980 U.S. Dist. LEXIS 15061 (M.D. Pa. 1980). In that case, the Court was attempting to determine what the Pennsylvania legislature meant when it stated in its statute of repose that the period began to run "after completion of … an improvement." *Id.* The District Court reasoned as follows:

> by employing the phrase "after completion of . . . an improvement," it appears that the General Assembly intended to mark the commencement of the limitations period as that point when third-parties would be exposed to any defect in design or construction. ***This would be when the entire improvement, and not merely a component part, is so far completed that it may be used for its intended purposes by the general public.*** Had the legislature intended to have the limitations period begin running at an earlier point they could have, as have other legislatures, stipulated that the period begins to run after completion of the defendant's services. Or the Act could have specified that the period begins to run from the date the defective subpart of the improvement is completed. ***By using instead the general term "improvement," the conclusion seems inescapable that the General Assembly was referring to the overall improvement under construction.***

*Id.* (emphasis added). *See, also, Federal Reserve Bank v. Wright*, 392 F. Supp. 1126, 1130, 1975 U.S. Dist. LEXIS 13643, 8 (D. Va. 1975) (holding that "a reasonable construction of the statute would suggest a single limitation period to run from the

30

final completion date of the entire project, whether the claim arises from faulty design or from faulty construction").

If the above reasoning is followed in the instant case, the statute of repose did not bar any claims against CTL. It is undisputed that if more than just the building pad is considered, CTL's last work under the SDA was performed less than 10 years prior to the filing of the underlying case. J.A. 901, 914-933.

The District Court relied upon several out-of-state cases to reject the above argument. However, the majority of the cases relied upon by the District Court actually support the argument that courts should seek to avoid piece-meal application of the statute of repose.

For instance, the District Court relied upon *Hopkins v. Fox & Lazo et al,* 242 N.J.Super. 320, 576 A. 2d 921 (1990). In that case, an architect performed design work for, but did not supervise, the construction of a residential project. A person was injured on the property more than ten years after the architect's work was complete but less than ten years after overall construction was complete. To avoid application of New Jersey's ten year statute of repose, the plaintiff in that case argued that the statute of repose should not have begun to run until after the overall construction was complete. The Court rejected that argument after concluding "we believe that when an

architect such as defendant Davis here, completes the work for which he was commissioned, he should be able to look back ten years and one day after the completed performance of his work and know there is repose from liability." *Id.* at 326, 924.

However, what the District Court in this case failed to recognize is that in reaching this conclusion, the *Hopkins* Court had to distinguish the case of *Welch v. Engineers, Inc.*, 202 N.J. Super. 387, 495 A.2d 160 (App. Div. 1985). The *Welch* court reached the opposite conclusion simply because the "the design and construction of the project…were undertaken by the same entity." *Id.* Thus, the *Hopkins* Court noted that in *Welch,* "we refused to condone a piece-meal concept of repose where the contractor is involved in multiple phases of the undertaking." *Id.*

 If the District Court had followed the reasoning of *Hopkins* and *Welch,* it would have reached the opposite conclusion because it is undisputed that CTL was involved in "multiple phases of the undertaking" and in fact continued to perform site work under the SDA long after the building pad was delivered to Lowe's.

Another case relied upon by the District Court is *Gordon v. Western Steel Co.,* 950 S.W.2d 743 (Tex. App. 1997). However, like *Hopkins, Gordon* actually supports the position taken by THF and Staenberg in this case. In *Gordon*, the court held that "the

32

statute of repose should be applied to each of those individual subcontractors when they have completed their respective improvements." *Id.* at 748. However, the Court specifically noted that the statute of repose should not begin to run until the subcontractor has completed all of its work on the project and after they "submit their final bills and/or walk away from the project." *Id.* at 749. In fact, the District Court ignored the following reasoning adopted by the *Gordon* court:

> [w]hen a single entity is responsible for the successive phases of a project, it would be unduly burdensome to segregate the completion of various successive projects by that entity, rather than focusing on when that entity finished its work towards the entire project….We do not think that the Legislature intended to let repose turn on serial cut-off dates accruing through various stages of the work where the same person was involved.

*Id.* at p. 747-48 (citations omitted). If this reasoning had been applied properly by the District Court, it would have concluded that the statute of repose did not begin to run until CTL completed all of its work under the SDA, not just the building pad.

A third case relied upon by the District Court, *Ocean Winds Corporation of Johns Island v. Lane,* 347 S.C. 416, 556 S..E.2d 377 (2001) is distinguishable. While the Court in that case applied a separate statute of repose to a company that provided windows to a project, it did so because the company only

33

provided windows and nothing else to the "larger condominium project." *Id.* at p. 417, 379.

Finally, the District Court noted in its Order denying appellants' motion to alter or amend judgment that: [t]his Court was not tasked with segregating phases of the project." J.A. 1139. Appellants could not agree more. It makes no sense for a court to attempt to segregate phases of a project to apply a piece-meal statute of repose. If that were the law, courts would have to apply a separate statute of repose to each window, board, nail, and shingle used to complete a project.

In short, it is undisputed that CTL performed site work on areas other than the building pad. Under the reasoning of the above cases, including cases relied upon by the District Court, to avoid piece-meal and confusing application of the statute of repose, it should not have begun to run until CTL completed all of its work under the SDA. Appellants hereby request that this Honorable Court reverse the decision of the District Court and find as a matter of law that the statute of repose did not begin to run until CTL completed all of its work under the SDA.

### E. Whether the District Court erred in its determination of the date the building pad was accepted.

The District Court concluded as a matter of law that the statute of repose began to run on April 15, 2002 when THF delivered the building pad to Lowe's. J.A. 864. It was error for

the Court to conclude that by simply forwarding a pad certification, THF was "accepting" the building pad within the meaning of the statute of repose.  Obviously, THF's "acceptance" of the pad was contingent upon Lowe's acceptance of it since THF hired CTL to prepare the pad to Lowe's specifications and for "delivery" to Lowe's.  The SDA specifically discusses acceptance by Lowe's when it states that: "[t]he date Developer actually completes and delivers the Building Pad Area as herein provided **and Lowe's accepts the same** shall be the 'Pad Delivery Date.'" J.A. 1009 (emphasis added).

This is a significant issue because it is undisputed that on April 25, 2002, Lowe's sent a construction progress document indicating that the building pad had still not been accepted by Lowe's. J.A. 877. This document alone is enough to establish that the statute of repose had not expired at the time that the underlying case was filed.[3]  In fact, as Judge Keeley noted in her memorandum opinion and order in the underlying case, "[a]s late as July, 9, 2003, Lowe's informed THF that certain items related to the building pad area remained unfinished." J.A. 118.

It should also be noted that the District Court's determination of when THF "accepted" CTL's work is based upon

---

[3] The underlying case was filed on April 26, 2012.  Thus, even if the pad had been accepted by Lowe's the next day, there would have been no issue with the statute of repose since the underlying case was filed within 10 years of that date.

the incorrect assumption that "CTL relinquished access to the site on April 9, 2002, when CTL issued a certification to Lowe's that the pad was complete." J.A. 863. That is not true. In fact, CTL remained on the site which is the subject of the SDA performing compaction and/or compaction testing on other areas adjacent to or near the building pad from the date of the pad certification through at least the end of May of 2002. J.A. 914-933. In fact, CTL was still on site at least as late as December 18, 2002 performing asphalt compaction testing at the request of THF. J.A. 935.

Based upon the above, the District Court erred in determining as a matter of law that THF "accepted" the work of CTL when it caused the pad certification to be issued to Lowe's. Appellants seek to have this honorable Court reverse and find that the statute of repose had not expired as a matter of law at the time the underlying case was filed because THF did not "accept" the pad until it was accepted by Lowe's. In the alternative, Appellants respectfully request that this honorable Court find that a genuine issue of material fact exists as to when the building pad was "accepted" by THF.

## VI.    CONCLUSION

Appellants THF Clarksburg Development Two, LLC and Michael H. Staenberg respectfully request that this honorable Court reverse the decision of the District Court granting summary

judgment in favor of St. Paul Mercury Insurance Company and National Surety Corporation. In addition, appellants respectfully request that the case be remanded for further proceedings, including trial.

### VII. REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 34(a), Appellants THF Clarksburg Development Two, LLC and Michael H. Staenberg respectfully request that this Court grant them oral argument on the issues presented by this appeal.

/s/ James C. Stebbins
_____
James C. Stebbins, WVSB 6674
Brittany A. Fink, WVSB 12537
Lewis, Glasser, Casey &
Rollins, PLLC
P. O. Box 1746
Charleston, WV  25326
304-345-2000
FAX:  304-343-7999
E-mail:   jstebbins@lgcr.com
E-mail:   bfink@lgcr.com
***Counsel for THF Clarksburg
Development Two, LLC and
Michael H. Staenberg***

## <u>CERTIFICATE OF COMPLIANCE WITH TYPEFACE AND</u>
## <u>LENGTH LIMITATIONS</u>

The undersigned counsel hereby certifies that this brief complies with Fed. R. App. 28.1(e)(2) and Fed. R. App. P 32(a)(5)(B).

This brief has been prepared in Microsoft Word, Courier New Font, 12 point, and contains 8,244 words (944 lines).

This 8th day of July 2015.

/s/ James C. Stebbins
James C. Stebbins, WVSB 6674
Brittany A. Fink, WVSB 12537
Lewis, Glasser, Casey &
Rollins, PLLC
P. O. Box 1746
Charleston, WV  25326
304-345-2000
FAX:  304-343-7999
E-mail:  jstebbins@lgcr.com
E-mail:  bfink@lgcr.com
***Counsel for THF Clarksburg***
***Development Two, LLC and***
***Michael H. Staenberg***

38

No. 15-1453

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

ST. PAUL MERCURY INSURANCE COMPANY

    Plaintiff - Appellee

v.

THF CLARKSBURG DEVELOPMENT TWO, LLC; MICHAEL H. STAENBERG

    Defendants – Appellants

and

NATIONAL SURETY CORPORATION

    Defendant-Appellee

and

LOWE'S HOME CENTERS, LLC

    Defendants.

## <u>CERTIFICATE OF SERVICE</u>

    The undersigned, counsel of record for Appellants, THF Clarksburg Development Two, Limited Liability Company and Michael H. Staenberg, does hereby certify on this 8th day of July, 2015, that a true copy of the foregoing **"APPELLANTS' BRIEF"** was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Jeffrey S. Zurbuch, Esq.
Peter G. Zurbuch, Esq.
BUSCH, ZURBUCH & THOMPSON, PLLC
P. O. Box 1819
Elkins, WV  26241
**COUNSEL FOR ST. PAUL MERCURY INSURANCE COMPANY**

John P. Fuller, Esq.
Michael W. Taylor, Esq.
BAILEY & WYANT PLLC
P. O. Box 3710
Charleston, WV  25337-3710
**COUNSEL FOR NATIONAL SURETY CORPORATION**

/s/ James C. Stebbins
James C. Stebbins, WVSB 6674
Brittany A. Fink, WVSB 12537
Lewis, Glasser, Casey &
Rollins, PLLC
P. O. Box 1746
Charleston, WV  25326
304-345-2000
FAX:  304-343-7999
E-mail:  jstebbins@lgcr.com
E-mail:  bfink@lgcr.com
*Counsel for THF Clarksburg*
*Development Two, LLC and*
*Michael H. Staenberg*